IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BARBIN,<br><br>          Plaintiff,<br>    v.<br>MV TRANSPORTATION, INC.,<br><br>          Defendant. | 1:12-CV-232 AWI GSA<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 15) |

      This case was removed from the Fresno County Superior Court on February 17, 2012.  It is an employment related dispute between Plaintiff Sean Barbin ("Barbin") and his former employer, MV Transportation, Inc. ("MVT").  Barbin alleges claims for breach of contract, wrongful termination, racial discrimination, negligence, and libel.  MVT now moves for summary judgment on all claims.  For the reasons that follow, MVT's motion will be granted.

**FACTUAL BACKGROUND**[1]

      Barbin was offered a position with MVT as a paratransit driver, which is a safety-sensitive position.  DUMF 1.  Barbin accepted the position and began work on May 7, 2007.  See DUMF 2.  Barbin knew when he applied for the position of paratransit driver that he was applying for a safety sensitive position, and also knew that the position would require him to be subject to pre-employment and random drug testing because drug and alcohol testing were required by government agencies.  See DUMF's 3, 4.  Throughout his employment at MVT, Barbin was a member of Amalgamated Transit Union Local 1027 ("the Union").  See DUMF 6.

---

[1] "DUMF" refers to "Defendants' Undisputed Material Fact" and "PRDUMF" refers to Plaintiffs' Response to Defendants' Undisputed Material Fact."

There was a Collective Bargaining Agreement ("CBA") in place between MVT and the Union which governed Barbin's employment. See DUMF 7. The CBA is the only document or agreement that governed the terms and conditions of Barbin's employment with MVT. See DUMF 16. Barbin was given a copy of the CBA. See DUMF 8. Article 9 of the CBA states that:

> In acknowledgment of the nature of [MVT]'s operations and the very special and overriding safety considerations, [MVT] has adopted formal provisions for fitness for duty Drug and Alcohol screening. [The Union] acknowledges that certain Federal drug and alcohol testing requirements bind [MVT]. The parties agree that any dispute regarding particular provisions of the drug and alcohol policy will be subject to the procedures in Article 10.

DUMF 11. Article 10 of the CBA sets forth the Grievance Procedure for processing grievances under the CBA. See DUMF 12. A "grievance" is a "claim that [MVT] has violated an express, specific provision of [the CBA]." Rocush Dec. Ex. 14 at p. 10. The procedure for grievances "must be followed." Id. Article 11 of the CBA provides for arbitration of all grievances not resolved under Article 10, and states the procedures for arbitration of grievances. DUMF 13. Section 14.5 of the CBA states: "The following violation of [MVT] policies and rules are considered serious infractions and shall be just cause for the immediate discharge of an employee, although [MVT] may impose, at its sole discretion, a lesser penalty . . . Violation of [MVT] Drug and Alcohol Program listed in Article 9 of this Agreement." DUMF 14.

In pertinent part, MVT's Substance Abuse Policy reads:

> Federal regulation requires that . . . all safety-sensitive employees will be subject to reasonable suspicion, post accident, random, return to duty and follow up drug and alcohol testing . . . . As a 'zero tolerance' employer, any positive drug or alcohol test will result in a termination of employment. (DUMF 27)
>
> Any employee who has a drug and/or alcohol abuse problem and has not been selected for reasonable cause, random, or post-accident testing or has not refused a drug or alcohol test may voluntarily refer her or himself to the General Manager or the Human Resources Department, who will refer the individual to [MVT]'s Substance Abuse Professional (SAP) for an evaluation and treatment. (DUMF 30)
>
> Any safety-sensitive employee who admits to a drug and/or alcohol problem will immediately be removed from his/her safety-sensitive function and will not be allowed to perform such function until successful completion of a prescribed rehabilitation program is completed . . . [MVT] shall make every effort to place the employee back in his/her position upon returning to work. However, an employee's commitment to an SAP does not guarantee that the employee's job

2

>will be available upon return.  (DUMF 31)
>
>FTA regulations specifically prohibit the use of the following illegal, prohibited substances and require testing for their presence under certain circumstances: Marijuana, Amphetamines, Opiates, [PCP], and Cocaine . . . Safety-sensitive employees may be tested for prohibited drugs at any time while on duty or on MVT property.  (DUMF 32)
>
>MVT shall require every covered employee who performs a safety-sensitive function . . . to submit to pre-employment, post-accident, random, and reasonable suspicion drug and alcohol test.  (DUMF 33)
>
>MVT is dedicated to assuring fair and equitable application of its 'Zero Tolerance' substance abuse policy.  Therefore, supervisors and managers are required to use and apply all aspects of this policy in an unbiased and impartial manner.  Any supervisor and manager who knowingly disregards the requirements of this policy, or is found to deliberately misuse the policy in regard to subordinates, shall be subject to disciplinary action, up to and including termination.  (DUMF 34)
>
>The basis for random [drug and/or alcohol testing] selection shall be by a scientifically valid random number generation method initiated by computer.  The dates for administering unannounced testing of randomly-selected covered employees shall be spread reasonably throughout the calendar year, month, week, and all hours that safety-sensitive functions are performed.  (DUMF 37)
>
>The consequences of a positive drug test or a test refusal are as follows: the employee will immediately be removed from safety sensitive duties, referred to a SAP, and terminated from employment.  (DUMF 38)
>
>MVT's 'Zero Tolerance Policy' means that any employee or applicant that tests positive for any drug or alcohol test will be immediately terminated and/or not hired so there is no follow up required by MVT with the SAP.  (DUMF 39)
>
>No employee will be removed from the random pool following selection, and every employee will continue to be subject to random selection throughout the year . . . .  Employees are only removed from the random pool when they are in rehabilitation programs, terminated, or permanently transferred to a non-safety-sensitive position, or expected to be out for at least 90 days or more.  (DUMF 41)

Barbin signed a receipt that acknowledge that he had received a copy of the Substance and Alcohol Abuse Policy Manual.  DUMF 42.  Barbin knew that he was subject to random drug testing, MVT had a 'zero tolerance policy' regarding substance abuse, a positive drug test would result in immediate termination, and understood the terms of the Substance Abuse Policy's Voluntary Rehabilitation provision as written.  See DUMF's 49, 50, 51.

Every month on the first business day of the month, MVT's Safety and Training Manager Timothy Bernard logs on to MVT's corporate intranet to receive the list of employees who have been selected for drug testing that month.  See DUMF 44.  When Bernard logged on in March

3

2010, Barbin's name appeared on the random drug testing list. See DUMF 45.

On March 22, 2010, Bernard asked a dispatcher to notify Barbin that he needed to report to his office so that Bernard could inform Barbin that he had been selected for a random drug test. DUMF 76. Barbin met Bernard in Bernard's office, where he told Bernard that he had been smoking marijuana and had last smoked about a week ago. See DUMF 78. Barbin told Bernard that he wanted a grievance form, that he had been having personal problems, that he needed help, that he needed time off, and that he did not want to make a habit out of smoking marijuana. See Barbin Depo. 57:13-19. Barbin requested a grievance in order to get help for his personal problems. See id. at 56:3-6. Bernard informed Barbin that Barbin had been selected for a random drug test. See DUMF 79. Bernard said that he did not know what to do and then made a phone call. See Barbin Depo. 55:9-16, 57:20-24. Bernard called Sheri Henderson, MVT's Drug & Alcohol Compliance Manager. See DUMF's 80, 86; Bernard Dec. ¶ 9. Bernard told Henderson that an employee who had been selected for a random drug test had just informed him that he had recently used marijuana and thought he might test positive on the drug test. DUMF 86. Bernard was instructed to send Barbin for random testing. See DUMF 80; Barbin Depo. 58:9-10; see also DUMF 86. That day, Barbin reported to Concentra, who are not employees of MVT, and Concentra performed the drug test. See DUMF 46, 82.

The following day, MVT General Manager Paul Kwiatkowski received the results of Barbin's March 2010 drug test, and the results were positive for marijuana. See DUMF 47. The Medical Review Officer spoke to Barbin and told Barbin that the random drug test was positive for marijuana. See DUMF 52. The Medical Review Officer informed Barbin about further testing by a second laboratory using a "split screen" sample, and Barbin agreed to the additional test.[2] See Barbin Depo. 72:13-73:24. The Medical Review Officer told Barbin that he would inform MVT about the further sampling. See id.

Later that day, Barbin had a meeting with Kwiatkowski, John Sanchez (a Union steward),

---

[2] The Substance Abuse Policy provides that, if a primary specimen tests positive for a drug, the employee may direct the Medical Review Officer to have the employee's split specimen be tested at a different laboratory. See DUMF 36.

4

and Rick Steitz (the president of the Union) concerning the positive drug test.  See Barbin Depo. 75:15-82:25; DUMF's 17, 18, 19.  In that meeting, Barbin said *inter alia* that he had asked Bernard for a grievance prior to being informed of the random drug test and that he had asked for the grievance in order to get help.  See id. at 81:19-23, 84:7-25.  Kwiatkowski gave Barbin information regarding drug treatment and acknowledged that the Medical Review Officer had indicated that there would be further sampling.  See id. at 81:9-19.  Another meeting was set for April 1, 2010.  See Kwiatkowski Dec. ¶ 6.

At the April 1, 2010, meeting, Barbin was informed that he was being terminated pursuant to Section 14.5 of the CBA because he had tested positive on the random drug test.  See DUMF's 55, 88.  At some point, Kwiatkowski had been informed by the Medical Review Officer that Barbin had not requested a split screen, and that no split screen sample was being analyzed.  See DUMF 48.  Sanchez and Steitz, who were at the termination meeting, told Barbin that he could appeal (file a grievance about) the termination, but Barbin responded that he did not want to pursue the appeal because he was going to file a lawsuit.  See DUMF 23.

Barbin understood the steps of the CBA grievance procedure.  See DUMF 21; see also DUMF 20.  Barbin never filed a grievance or requested that a grievance be filed on his behalf. DUMF 22.  Barbin never talked to the Union about grieving his termination, nor did he request that the termination be grieved.  DUMF 24.  Barbin also declined to attend or participate in the Union's offer to set up a meeting to try and get his job back.  See DUMF 25.  Barbin decided he was going to pursue his remedy through an attorney, and not through the Union, even though the Union was calling to try and help him.  See id.

**SUMMARY JUDGMENT FRAMEWORK**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of

5

identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d at 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most

persuasive inference, a "justifiable inference" must be rational or reasonable.  See Narayan, 616 F.3d at 899.  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

## DEFENDANTS' MOTION

### 1.     3rd Cause of Action – Negligence

*Defendant's Argument*

MVT argues that the alleged negligence was the failure of MVT to follow the CBA's grievance procedure and the failure to keep confidential the reason for Barbin's termination. Assuming that such duties exist, they arise from the CBA and thus, are preempted.  Further, the CBA contains a mandatory grievance and arbitration provision.  Barbin did not follow this procedure and thus, failed to exhaust his remedies.

In reply, MVT also argues that Barbin's reliance on MVT's failure to send him to a SAP is unavailing.  Any obligation to refer Barbin to a SAP is based on the CBA and subject to preemption.  Further, the failure to send Barbin to a SAP would be subject to the mandatory grievance and arbitration procedure, which was not followed.  Finally, the evidence shows that Kwiatkowski spoke to Barbin about referral to a SAP and gave Barbin paperwork referring him to a SAP.  Thus, the CBA was not breached.

7

*Plaintiff's Opposition*

Barbin argues that the General Manager was under a duty to refer him to the SAP for evaluation and treatment. Barbin contends that when he spoke to Bernard, he requested a grievance, but was not given the necessary forms. The request for treatment was made before Bernard told Barbin about the random drug test, and MVT had a duty to refer him for testing at that point. Further, after he spoke to Bernard, Barbin contends that he later spoke to Bernard, Kwiatkowski, Sanchez and Steitz and made a verbal request for treatment and a grievance, but nothing happened. Barbin states that he exhausted his remedies.

*Legal Standards*

Under § 301 of the LMRA, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a); Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). "Although the text of § 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements . . . [as well as] cases the resolution of which 'is substantially dependent upon analysis of the terms of [a collective bargaining agreement].'" Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005). "The Supreme Court has held in a variety of contexts that § 301 acts to preempt state law claims that substantially depend on the CBA, that are premised on negotiable or waivable state law duties the content of which has been covered by the CBA, or that seek to enforce the terms of the CBA, for example, breach of contract claims." Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002); see also Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522-23 (9th Cir. 1995). In other words, "state law causes of action are preempted if they are either based upon the collective bargaining agreement or dependent upon an interpretation of the agreement." Ramirez v. Fox Broadcasting, Inc., 998 F.2d 743, 748 (9th Cir. 1992); see also Burnside, 491 F.3d at 1059-60. However, a state law claim "that is independent of rights under the collective-bargaining agreement, will not be preempted . . . ." Valles, 410 F.3d at 1076; see also Jimeno, 66 F.3d at 1522-23. Accordingly,

LMRA § 301 "should be applied only to state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, and to tort suits which allege breaches of duties assumed in collective bargaining agreements." Associated Builders & Contrs. v. Local 302 IBEW, 109 F.3d 1353, 1357 (9th Cir. 1997). When LMRA § 301 preemption applies, the state law claim is either treated as a § 301 claim for breach of the CBA or dismissed. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); Stone v. Writer's Guild of Am. West, 101 F.3d 1312, 1314 (9th Cir. 1996); Newberry v. Pacific Racing Ass'n, 854 F.2d 1142, 1146-47 (9th Cir. 1988).

However, "not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000). "A claim brought in state court on the basis of a state-law right that is 'independent of rights under the collective-bargaining agreement,' will not be preempted, even if 'a grievance arising from 'precisely the same set of facts' could be pursued. . . . [W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Valles, 410 F.3d at 1076. "[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly - it means something more than 'consider,' 'refer to,' or 'apply.'" Balcorta, 208 F.3d at 1108. "[T]he need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim." Valles, 410 F.3d at 1076; see also Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 413 n.12 (1988).

Before bringing suit under LMRA § 301 to enforce the terms of a CBA, "an employee must first exhaust the grievance procedures established by the CBA." Sidhu v. Flecto, Inc., 279 F.3d 896, 898 (9th Cir. 2002); see also Soremekun, 509 F.3d at 985-86; Carr v. Pacific Maritime Ass'n, 904 F.2d 1313, 1317 (9th Cir. 1990). "Failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court." Carr, 904 F.2d at 1317; see also Brown v. Lucky Stores, 246 F.3d 1182, 1189 (9th Cir. 2001). However, an employee need not exhaust grievance procedures where the employer repudiates the specific grievance procedures provided for in the collective bargaining agreement. Sidhu, 279 F.3d at

898-99; Herman v. United Bhd. of Elec. Workers Local No. 971, 60 F.3d 1375, 1380 (9th Cir. 1995). Repudiation does not apply "simply because the employer refused to follow one or more of the substantive terms of the CBA . . . ." Sidhu, 279 F.3d at 898-99. Exhaustion may also be excused where the union breaches its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith towards a member, such as by ignoring a meritorious claim or perfunctorily processing the grievance claim. See Herman, 60 F.3d at 1380; Zuniga v. United Can Co., 812 F.2d 443, 451 (9th Cir. 1988). No breach of the duty of fair representation occurs where a meritless grievance is not processed, the union engages in mere negligent conduct, or the union makes a simple error in evaluating the merits. See Zuniga, 812 F.2d at 451.

*Discussion*

The Complaint indicates that the bases of the negligence claim are a failure to follow the Article 10 grievance procedure and a failure to keep confidential the nature of Barbin's termination. See Doc. No. 1 at ¶¶ 5(a), 5(b). The opposition focuses on Barbin's requests for drug treatment and his grievance request to Bernard prior to being informed that he was selected for random drug testing. Barbin has identified no independent duty owed by MVT to give him grievance forms, to refer or send him for drug treatment, or to not disclose the reason for his termination. These obligations arise purely from the CBA. See DUMF's 10, 11, 13, 30. Because the duties alleged by Barbin arise from, and require interpretation of, the CBA, Barbin's negligence claims are preempted by LMRA § 301. See Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 999 (9th Cir. 2007) ("State law negligence claims are preempted if the duty relied on is created by a [CBA] and without existence independent of the agreement."); see also Associated Builders, 109 F.3d at 1357; Ramirez, 998 F.2d at 748. Summary judgment on the state law negligence theory is proper. See Stone, 101 F.3d at 1314; Hill v. Boeing Co., 765 F.Supp.2d 1208, 1213-14 (C.D. Cal. 2011).

When state law claims are preempted by LMRA § 301, the claim may be treated as one for a LMRA § 301 breach of a CBA. See Allis-Chalmers, 471 U.S. at 220; Stone, 101 F.3d at 1314. Viewing Barbin's negligence claims as LMRA § 301 breach claims, however, does not change the result.

The CBA's grievance procedure is mandatory. See Rocush Dec. Ex. 14 at p. 10. As such, Barbin was required to exhaust the CBA's grievance procedure before filing this lawsuit. See Soremekun, 507 F.3d at 985-86; Sidhu, 279 F.3d at 898; Carr, 904 F.2d at 1317. The grievance procedure indicates that the Union is to present in writing a grievance to the Project Manager. See Rocush Dec. Ex. 14 at p. 11 (§ 10.2(a)). There is no provision made for the employee to institute a grievance on his own by contacting a manager. See id. Thus, merely asking for a grievance or a form from Bernard does not fit the first step of the CBA's grievance procedure. Barbin admitted that he did not follow the steps of the CBA grievance procedure in regards to any of his complaints against MVT. See Barbin Depo. 156:13-15.

Furthermore, a "grievance" is a complaint that MVT violated the terms of the CBA. See Rocush Dec. Ex. 14 at p. 10. The evidence indicates that when Barbin went to Bernard's office, he told Bernard that he wanted a grievance in order to get help, including drug treatment help, and time off. See Barbin Depo. 56:1-57:19, 84:7-25. There is no evidence that MVT had previously denied a request by Barbin for drug treatment help. Rather, it appears that Barbin simply attempted to obtain the help described under the Substance Abuse Policy's self-reporting clause for the first time.

Barbin's opposition indicates that he again made known his grievance request in the March meeting with Kwiatkowski, Steitz, and Sanchez. That meeting was about the positive drug test result. See Barbin Depo. 75:7-77:7. As described above, Barbin indicated that he had wanted a grievance form from Bernard in order to get help, including drug treatment help. See id. at 84:13-86:7. Kwiatkowski then gave Barbin forms and information about seeing the SAP/attending drug treatment, and told Barbin that MVT would not pay for the drug treatment. See id. at 79:4-9, 87:14-21. There is no evidence that Kwiatkowski's conduct in providing the drug treatment forms to Barbin violated the CBA, nor is there any indication that Kwiatkowski was required to do something other than provide Barbin with the forms and information. Barbin's testimony does not indicate that he requested an additional grievance after he received the information or that Kwiatkowski's conduct was somehow unacceptable to him.

The combined effect of this evidence is that Barbin never properly invoked or utilized the

CBA grievance procedure.  First, no formal written complaint was ever filed by the Union as described in Article 10, and, by definition, Barbin had no actual "grievance" when he asked Bernard for a grievance form.  Second, it appears that Kwiatkowski gave Barbin the requisite information regarding the SAP/drug treatment.  This would be tantamount to granting Barbin's "grievance."  If Kwiatkowski's conduct was insufficient or unacceptable, there were additional steps that could have been taken, including the filing of a formal written grievance, an appeal to the Company District Manager, and ultimately arbitration.  See Rocush Dec. Ex. 14 at pp. 10-11.  Therefore, Barbin did not comply with the CBA grievance procedure.

There is an exception to the exhaustion requirement when the employer repudiates the CBA's grievance procedures.  See Sidhu, 279 F.3d at 898-99; Herman, 60 F.3d at 1380.  However, as discussed above, the first step of the grievance process was never actually met and, in any event, Kwiatkowski talked to Barbin, found out what Barbin was attempting to accomplish through the "grievance," and then gave Barbin the relevant SAP/drug treatment information.  This appears to be in compliance with the Substance Abuse Policy and Barbin's request, and does not show repudiation by MVT.

There is also an exception to exhaustion when a union violates its duty of fair representation.  See Herman, 60 F.3d at 1380; Zuniga, 812 F.2d at 451.  The evidence indicates that Steitz and Sanchez were present at the meeting where Kwiatkowski gave Barbin the SAP/drug treatment information.  See Barbin Depo. 75:7-77:7.  However, there is no evidence that Barbin asked them to file a formal grievance, nor is there an indication that Kwiatkowski's conduct was inappropriate or contrary to the CBA.  Further, even if it is assumed that Kwiatkowski's conduct violated the CBA, on the day Barbin was terminated, Steitz and Sanchez asked Barbin if he wanted to appeal the termination and Barbin declined.  See id. at 98:15-103:7.  Further, sometime after the termination, Sanchez and Steitz contacted Barbin about setting up a meeting with Bernard, Kwiatkowski, and another manager about getting Barbin his job back.  See id. at 137:11-138:24.  Due to legal advice and distrust of the motives involved, Barbin declined the meeting and thereafter refused to accept calls from Sanchez and Steitz.  See id.  This evidence indicates that the Union offered to appeal and made attempts to get Barbin reinstated.

While perhaps there were better methods, the evidence at best suggests only negligence by the Union, which is insufficient.  See Zuniga, 812 F.2d at 451.  It is true that Barbin declined to attend the proposed meeting in part out of distrust, but the evidence does not indicate actual bad faith on the part of the Union.  There has been an inadequate showing that the Union violated its duty of fair representation to Barbin.  See id.; DUMF 23, 24, 25.

Because the evidence does not show either compliance with the CBA's mandatory grievance procedures or an exception to compliance, Barbin cannot proceed with this claim.  See Brown, 246 F.3d at 1189; Carr, 904 F.2d at 1317.  In addition to LMRA § 301 preemption, summary judgment is appropriate due to failure to exhaust CBA remedies.

### 2. Breach of Contract, Racial Discrimination, & Wrongful Termination

*Defendant's Argument*

With respect to the breach of contract claim, MVT argues that Barbin's claim is based on the CBA.  Because the claim is based on breaches of the CBA, it is preempted under LMRA § 301.  Additionally, the claim fails because Barbin did not exhaust the mandatory remedies under the CBA.  Finally, the evidence shows that Bernard did not breach the CBA when he did not refer Barbin to the SAP, but instead sent him for drug testing.

With respect to racial discrimination, MVT argues that Barbin cannot establish a prima facie case of discrimination because he cannot show that he was treated differently than other employees.  The employees identified by Barbin as having been treated differently were Ben Steitz and Megan Solis.  However, Solis never tested positive for drug use, and Steitz never tested positive and voluntarily sought drug treatment prior to being selected for random testing.  Further, MVT has terminated two employees in addition to Barbin for violating the "zero tolerance" policy, and neither were African American.  Finally, MVT argues that it terminated Barbin for failing the drug test and not because of race.  Barbin was randomly selected for drug testing based on a computer program, not because of race.

With respect to wrongful termination, for the reasons that the breach of contract and race discrimination claims fail, the wrongful termination claim also fails.

13

*Plaintiff's Opposition*

Barbin argues that, due to an illness in October that hindered his discovery efforts, he wishes to dismiss these causes of action under Rule 41(a)(1).[3]

*Discussion*

a.    Rule 41(a)

Initially, Barbin cannot dismiss these claims unilaterally under Rule 41(a)(1). A plaintiff can only unilaterally dismiss his case if the defendant has not served either an answer or a summary judgment motion. See Fed. R. Civ. Pro. 41(a)(1). Here, MVT has filed and served both an answer and a motion for summary judgment. Nevertheless, the Court will view Barbin's request for a dismissal as brought under Rule 41(a)(2). That provision provides that, "an action may be dismissed on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

b.    Breach of Contract

Barbin's breach of contract cause of action is based on violations of the CBA. See DUMF 15; Barbin Depo. 176:12-14. The precise conduct that allegedly breached the CBA is not clear. The Complaint identifies violations of the CBA's racial discrimination policy and the grievance procedure, while Barbin's deposition indicates that MVT breached the CBA when Bernard sent him for drug testing after Barbin had requested drug treatment. See Doc. No. 1 at ¶¶ 3(b)(I), (ii); DUMF 56.

Irrespective of the precise conduct, for the same reasons that Barbin's negligence claim fails, this claim also fails. First, because the breach of contract cause of action is ultimately based on violations of CBA provisions, it is preempted under LMRA § 301. See Humble, 305 F.3d at 1007; Herman v, 60 F.3d at 1380 n.2; Ramirez, 998 F.2d at 748; Hill, 765 F.Supp.2d at 1213-14. Second, the only evidence and testimony regarding grievances or appeals establishes

---

[3] On February 5, 2013, Barbin filed a motion to extend discovery deadlines. See Doc. No. 23. In that motion, Barbin indicated that he had gathered all of his evidence, but became ill and was hospitalized in October 2012. See Doc. No. 23. The initial scheduling order was entered on April 18, 2012, and set a non-expert discovery deadline of November 30, 2012. See Doc. No. 8. The Court denied the motion because there was an insufficient description of Barbin's hospitalization and/or health condition, and the purpose of the motion appeared to be for Barbin to disclose discovery evidence to MVT that he had already gathered. See Doc. No. 29.

that Barbin did not utilize the CBA grievance procedure for either his termination, his being sent for drug testing on March 22, or the failure of Bernard to provide drug treatment information. See Rocush Dec. Ex. 14 at pp. 10-11; Barbin Depo. 56:1-57:19, 75:7-87:21, 98:15-103:7, 137:11-138:24, 156:13-15; DUMF's 24, 25.  Thus, Barbin did not exhaust his remedies under the CBA.  Because he did not exhaust his remedies, he cannot proceed with this cause of action.  See Brown, 246 F.3d at 1189; Carr, 904 F.2d at 1317.

Since this claim fails for the same reasons that the negligence claim fails, dismissal of the breach of contract cause of action will be with prejudice.

### c. Racial Discrimination

The Complaint is somewhat ambiguous as to which legal theory Barbin relies upon. MVT's motion assumes that Barbin is proceeding under Government Code § 12940(a), the California Fair Employment and Housing Act ("FEHA").  Barbin did not clarify the basis of this claim, but the Court finds it noteworthy that the Complaint attached a copy of a California Department of Fair Employment and Housing ("DFEH") claim form.  See Complaint at Ex. B. Filing an administrative claim with the DFEH is a prerequisite to filing a FEHA lawsuit.  See McDonald v. Antelope Valley Comm. Coll. Dist., 45 Cal.4th 88, 106 (2008); Rojo v. Kliger, 52 Cal.3d 65, 88 (1990).  Considering the DFEH claim form, the Court agrees with MVT and reads Barbin's racial discrimination claim as being brought under FEHA.[4]

FEHA race discrimination claims are generally independent of CBA's and not preempted by LMRA § 301.[5]  See Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 644 (9th Cir. 1989).  To state a prima facie case of discrimination under FEHA, a plaintiff must show: (1) he was a member of a protected class; (2) he was qualified for the position he sought or was performing competently in the position he held; (3) he suffered an adverse employment action; and (4) some other circumstance that suggests a discriminatory motive by the employer.  See Zeinali v.

---

[4] The Complaint contains two causes of action for "wrongful termination," and the allegations under each cause of action are identical.  Cf. Doc. No. 1 at ¶ 4 with Doc. No. 1 at ¶ 7.  The allegations indicate violations of the CBA's anti-discrimination and grievance policies, as well as termination for racial reasons.  See id.  MVT reads the complaint as attempting to allege a FEHA claim and a separate wrongful termination in violation of public policy claim.  This reading seems reasonable and fair to Barbin.  The Court will adopt this interpretation of the Complaint.

[5] MVT does not argue that LMRA § 301 preemption applies to Barbin's FEHA cause of action.

Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011); Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 355 (2000).

Here, the basis of Barbin's race discrimination claim is that one other employee, Ben Steitz, was allegedly provided drug treatment while Barbin was not, and one other employee, Megan Solis, allegedly had a positive drug test but was not terminated, while Barbin was terminated. See DUMF 70. However, MVT has presented evidence that Megan Solis never tested positive on any drug test administered while working for MVT. See DUMF 73. Without a positive drug test, Solis is not comparable to Barbin.

MVT has also presented evidence that Ben Steitz never tested positive on a drug test and, at the time he informed MVT of his drug use, he had not been selected for a random drug test. See DUMF's 71, 72. Kwiatkowski found Steitz sleeping on the job, Steitz then admitted to drug use, and Kwiatkowski then ordered Steitz to have a drug test based on reasonable cause, but Steitz's test came back negative. See Kwiatkowski Dec. ¶ 13. Steitz attended drug treatment through unpaid leave and paid for the treatment himself. See id. at ¶ 15.

Steitz's experience does not indicate discrimination when compared to Barbin. Steitz had not been selected for random testing when he requested drug treatment, and Steitz never tested positive for drugs. These facts alone distinguish Steitz's situation from Barbin. Additionally, in both Steitz's and Barbin's cases, the employee was required to take a drug test despite admission of a drug problem. Barbin had to take the drug test because he had already been randomly selected for a test, while Steitz took the drug test based on "reasonable cause."[6] See DUMF's 43, 44, 45; Kwiatkowski Dec. ¶ 13. This appears to be consistent with the CBA, which permits an employee to voluntarily self-refer a substance abuse problem to MVT when the employee has "not been selected for reasonable cause, random, or post-accident testing . . . ." DUMF 30.

Finally, MVT has presented evidence that its Employee Handbook contains an Equal Opportunity non-discrimination provision and, since April 2006, only two individuals at Barbin's branch/location had been discharged for testing positive on drugs and neither of those individuals

---

[6] There is no evidence that Steitz was voluntarily referring himself to Kwiatkowski for purposes of obtaining drug evaluation and treatment under the Substance Abuse Policy.

were African-American. See DUMF's 10, 67, 74. This evidence indicates that MVT is cognizant of racial discrimination, prohibits discrimination at least as part of a stated policy, and does not single out African-Americans through application of its "zero tolerance" drug policy.

The evidence submitted by MVT is substantial, and it is sufficient to negate the fourth element of a FEHA prima facie case. There is no evidence that reasonably suggests Barbin's termination was based on improper racial motivations. MVT's treatment of Megan Solis and Ben Steitz does not reflect discriminatory animus towards African-Americans. Because Barbin's claim rests on how MVT treated Megan Solis and Ben Steitz, the Court finds that dismissal of this claim should be with prejudice.

### d. Wrongful Termination

This claim appears to be based either on violations of the CBA or on racial discrimination. See Doc. No. 1 at ¶¶ 4, 7. For the same reasons that the breach of contract, negligence, and FEHA racial discrimination claims fail, this claim also fails. There is no evidence that MVT acted with an improper racial motivation, it is not clear that the CBA was violated, and Barbin did not exhaust his remedies under the CBA because he did not properly utilize the grievance procedure. Because the other causes of action will be dismissed with prejudice, or summary judgment will be granted, this wrongful termination claim will also be dismissed with prejudice.

### **3. Libel**

*Defendant's Argument*

MVT argues that this claim is based on the nature of Barbin's termination being leaked. However, truth is an absolute defense to a claim for libel, and it is true that Barbin took marijuana, tested positive for marijuana, and was terminated based on the failed drug test.

*Plaintiff's Opposition*

Barbin argues that he has witness statements from third parties who overheard an MVT driver talking to a passenger. The MVT driver stated that Barbin had been fired for smoking weed and for failing a drug test.

*Discussion*

"In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." Raghavan v. Boeing Co., 133 Cal.App.4th 1120, 1132 (2005); Smith v. Maldonado, 72 Cal. App. 4th 637, 646 (1999).

Barbin's libel claim is based solely on the allegation that MVT did not keep confidential the fact that Barbin was terminated for a positive drug test. See DUMF 62. There is no dispute that Barbin took a drug test, Barbin failed the drug test, Barbin had smoked marijuana while employed by MVT, and MVT's stated basis for termination was the failed drug test. See DUMF's 46, 47, 50, 55, 78, 88. Barbin did not address MVT's "truth defense" argument in his opposition. Because the Court has granted summary judgment on the negligence cause of action, and has dismissed the wrongful termination, breach of contract, and racial discrimination claims with prejudice, there is nothing to suggest that Barbin was terminated for any reason other than violating the substance abuse policy. That is, assuming MVT said or otherwise published that it had terminated Barbin because he failed a drug test, the evidence indicates that this would be a true statement. Because true statements cannot form the basis of any defamation claim, summary judgment on the libel cause of action is appropriate. See Raghavan, 133 Cal.App.4th at 1132; Smith, 72 Cal. App. 4th at 646.

## CONCLUSION

MVT moves for summary judgment on all claims alleged against it. Barbin opposes summary judgment on the negligence and libel claims, and requests dismissal under Rule 41(a)(1) of the wrongful termination, breach of contract, and racial discrimination claims. For the state law causes of action that are preempted by LMRA § 301, the evidence shows either no breach of the CBA and/or a failure to exhaust the mandatory remedies within the CBA. For the state law claims that are not preempted by LMRA § 301, the evidence shows either the absence of circumstances that indicate an improper racial motive or true statements made by MVT . Therefore, summary judgment and dismissal with prejudice will be granted.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is GRANTED with respect to the negligence and libel causes of action;

2. Plaintiff's request to dismiss the wrongful termination, racial discrimination, and breach of contract causes of action is GRANTED, but the causes of action are DISMISSED WITH PREJUDICE; and

3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   April 23, 2013

SENIOR DISTRICT JUDGE